E. Thomas McCarthy, Jr. (MI Bar P28714)
tmccarthy@srr.com
SMITH HAUGHEY RICE & ROEGGE
100 Monroe Center NW
Grand Rapids, Michigan 49503-2802
T: 616.774.8000  F: 616.774.2461

Lawrence M. Hadley (CA Bar 157728)
lhadley@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Blvd., 19th Fl.
Los Angeles, California 90067
T: 310.553.3000  F: 310.556.2920

Attorneys for Plaintiff
UUSI, LLC d/b/a Nartron

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UUSI, LLC D/B/A NARTRON, | § | Case No. 2:24-cv-13104 |
| | § | |
| Plaintiff, | § | **COMPLAINT FOR COPYRIGHT** |
| | § | **AND PATENT INFRINGEMENT** |
| v. | § | |
| | § | |
| FUTABA CORPORATION OF | § | |
| AMERICA; FUTABA | § | **Jury Trial Demanded** |
| CORPORATION; and DOES 1-10, | § | |
| inclusive, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

UUSI, LLC doing business as Nartron ("Nartron") hereby brings this

Complaint against Futaba Corporation of America ("FCA"), Futaba Corporation ("Futaba Japan") (together, "Futaba"), and Does 1-10 (collectively, "Defendants") for copyright and patent infringement. Nartron alleges and states as follows:

## INTRODUCTION

1.      This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 501, and patent infringement under the Patent Act, 35 U.S.C. § 271 *et seq*.

2.      Since the 1960s, Nartron has been a leading technological innovator in the design, development, manufacture, and marketing of electronic systems and components for automobiles, trucks, military, and consumer products. Based in Reed City, Michigan, Nartron devotes enormous resources in creating its innovations and protects that investment through intellectual property protections, including copyrights and patents.

3.      This case involves copyrights that Nartron owns on its source code for software ("software code") that Nartron developed and installed in printed circuit board assemblies for use in the integrated center stacks of automobiles (the "PCBAs").

4.      Nartron is the sole author and exclusive owner of the software code, which Nartron registered with the United States Copyright Office.

5.      This case also involves three patents owned by Nartron (collectively, the "Patents-in-Suit"), which were duly issued by the United States Patent and Trademark Office ("USPTO"), true and correct copies of which are attached as **Exhibits A-C** hereto:

| Ex. | U.S. Patent No. | Title |
|---|---|---|
| A | 9,538,589 (the "'589 Patent") | Vehicle accessory control arrangement |
| B | 9,840,185 (the "'185 Patent") | Vehicle accessory control arrangement |

| C | 10,220,762 (the "'762 Patent") | Vehicle accessory control arrangement |
|---|---|---|

6.    Nartron is the sole owner, by assignment, of all right, title, and interest in and to each of the Patents-in-Suit.

7.    In or around 2011, JVIS – USA, LLC and its related entities ("JVIS") engaged Nartron to engineer and produce the PCBAs to integrate into JVIS's instrument panel bezels for use in various vehicles made by Stellantis N.V. (formerly known as Chrysler Corp.), including at least the Dodge Durango 2014-2021, Jeep Grand Cherokee 2014-2015, certain Dodge Charger models, and certain Chrysler 3000 models. JVIS maintains operations and facilities in Macomb County, Michigan.

8.    In or around 2012, unbeknownst to Nartron, JVIS shared Nartron's proprietary information, including prototype PCBAs, design files, testing data, software code, manufacturing layouts and specifications, and production part approval process (PPAP) package materials, including the PCBAs themselves containing Nartron's software code, with Futaba, Nartron's direct competitor.

9.    Futaba used Nartron's proprietary information, including at least Nartron's PCBAs containing Nartron's software code, to reverse engineer each and every aspect of Nartron's PCBAs, including the arrangement and the software code embedded therein.

10.    After reverse engineering Nartron's software code, Futaba copied Nartron's entire PCBA design.  At that point, JVIS terminated its contract with Nartron for the supply of PCBAs to integrate into JVIS's instrument panel bezels, and contracted with Futaba to provide the Nartron-designed PCBAs (presumably, at a lower cost). Futaba continues to make and sell to JVIS Nartron-designed PCBAs containing the copyrighted software code and the patented arrangement.

11.    Nartron now seeks relief from this Court to stop Defendants' wrongful

conduct and disgorge from Defendants their ill-gotten gains. Nartron also seeks a declaration that this is an exceptional case, a permanent injunction, enhanced damages, attorneys' fees and costs, and interest on the judgment.

## PARTIES

12.     Nartron is a Michigan limited liability company with its principal place of business in Reed City, Michigan.

13.     Nartron is informed and believes, and on that basis alleges, that FCA is an Alabama corporation with its principal place of business at 5401 Trillium Blvd., Suite A225, Hoffman Estates, Illinois 60192.

14.     Nartron is informed and believes, and on that basis alleges, that Futaba Japan is a Japanese company with its principal place of business at 629 Oshiba, Mobara, Chiba, 297-0026, Japan.

15.     Nartron is informed and believes, and on that basis alleges, that Defendants are responsible for their acts and for their conduct, which are the true legal causes of the damages herein alleged.

16.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1-10, inclusive (individually, a "Doe Defendant" and  collectively, "Doe Defendants"), are unknown to Nartron at this time, and Nartron, therefore, sues Doe Defendants by such fictitious names. Nartron will ask leave of Court to amend this Complaint when the same shall have been ascertained. Nartron is informed and believes, and on that basis alleges, that each Doe Defendant was responsible intentionally, or in some other actionable manner, for the events and happenings referred to herein, which proximately caused injury and damage to Nartron, as hereafter alleged.

17.     Any reference to Defendants shall refer to each named Defendant and all Doe Defendants, and to each of them. Any reference to a particular Defendant shall refer to the named Defendant only.

## JURISDICTION AND VENUE

18.    Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

19.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

20.    Venue is proper in the Eastern District of Michigan under 28 U.S.C. §§ 1391 and 1400(b) because (a) Defendants may be found in this district, (b) a substantial part of the events giving rise to the asserted claims occurred in this district, (c) Defendants transact business in this district, (d) Defendants have committed acts of copyright infringement in this district, (e) Defendants have committed acts of patent infringement in this district; and (f) Futaba Japan, as a foreign company, may be sued in any district.

21.    Personal jurisdiction as to Defendants is conferred on this Court because, on information and belief, Defendants' contacts with the State of Michigan are systematic and continuous so as to render Defendants essentially at home in Michigan. Defendants sell and ship the Accused PCBAs to JVIS in Macomb County, Michigan. Moreover, Defendants know or could reasonably foresee that the PCBAs are sold in Dodge and Jeep vehicles, and further, Defendants know or could reasonably foresee that the PCBAs are manufactured and sold throughout the State of Michigan. Defendants have previously consented to jurisdiction in the State of Michigan.

## STATEMENT OF FACTS

22.    Since 1967, Nartron has been designing, developing, manufacturing, and marketing electronic systems and components for the automotive, military, and consumer product industries.

23.    Nartron's expertise in its field has caused Nartron to received numerous unsolicited recognitions for providing outstanding electronics. For instance, Inc.

Magazine named Nartron as one of America's Top 30 Innovators and in 2013 Nartron was a Pace Award Finalist.

24.     Among Nartron's vast portfolio of intellectual property, Nartron is the sole author and exclusive owner of all right, title, and interest in and to the copyright of its software code for the PCBAs.

25.     As of the date hereof, Nartron has registered this source code with the United States Copyright Office. In particular, on May 15, 2023, Nartron registered the work *Printed Circuit Board Software Code*, Registration No. TX 9-263-201 (the "Registered Work"). *See* **Exhibit D** for a true and correct copy of the registration for the Registered Work. Nartron therefore holds the right to sue and recover damages for infringement of its copyright.

26.     Nartron is also the exclusive owner, by assignment, of all right, title, and interest in and to the Patents-in-Suit. The assignment documents, assigning all rights from the respective inventors of the Patents-in-Suit to Nartron, are recorded at the USPTO. True and correct copies of the assignments are attached as **Exhibit E** hereto.

27.     The Patents-in-Suit describe and claim an innovative vehicle accessory control arrangement. The patented components enhance manufacturing and design economies and accommodate the complexities of a vehicle accessory control interface for a variety of vehicles.

28.     The earliest-filed application for the Patents-in-Suit is U.S. Application No. 14/168,036 (the "'036 Application"), filed on January 30, 2014, which issued as the '589 Patent on January 3, 2017. *See* **Ex. A** at 1. The '036 Application claims priority to U.S. Provisional Application No. 61/859,837, which was filed on July 30, 2013. All of the other Patents-in-Suit claim priority to the '036 Application as continuations-in-part. Accordingly, the general disclosures of the Patents-in-Suit can be summarized by reference to the disclosures of the '589 Patent.

29.    The invention of the Patents-in-Suit include (1) a first circuit board substrate and (2) a second circuit board substrate, which are arranged in a plane and selectively movable relative to each other to form an overall perimeter shape. The overall perimeter shape is useful for a variety of vehicles and a variety of accessory control interface configurations. '589 Patent at 2:65-67, 3:1. Using two board portions, that is, the first circuit board substrate and the second circuit board substrate, provides improved flexibility in the vehicle accessory control interface design by allowing different orientations and placement of the boards relative to each other. *Id.* at 3:12-18.

30.    One embodiment of a vehicle accessory control component is shown in Figure 2 of the '589 Patent, reproduced below:



*Fig-2*

31.    As seen above, the first circuit board substrate 24 has a plurality of circuit elements 34, an outer edge profile 30, and a plurality of first deviations 32 along the outer edge profile 30. Similarly, the second circuit board substrate 26 has a plurality of circuit elements 34, an outer edge profile 30, and a plurality of second deviations along the outer edge profile 30, with at least one of the second deviations being different than the first deviations. The deviations 32 include at least one of

recesses, notches, radii, chamfers, tabs, or protrusions, the number and placement of which may vary. *Id.* at 3:28-32. In this way, the deviations 32 allow for identifying and controlling which circuit board configuration is intended to be included with particular vehicles or vehicle accessory control interfaces. *Id.* at 3:1-5.

32.     In or around 2011, JVIS accepted Nartron's proposal to engineer and produce the PCBAs for integration into JVIS's instrument panel bezels for use in at least the 2014 Chrysler Jeep Grand Cherokee. At all times relevant herein, JVIS was an automotive supplier that manufactured and assembled automotive components for tier one suppliers and original equipment manufacturers. Also at such times, JVIS Mayco International LLC, was and has remained the tier one supplier of the cockpit module used by Chrysler Group, LLC.

33.     In or around July 2012, JVIS scheduled a site visit for Futaba at Nartron's facilities under the false pretense that Futaba intended to create a backseat climate control module for the 2014 Chrysler Jeep Grand Cherokee.

34.     Futaba is a direct competitor of Nartron and also produces electronic displays, printed circuit board assemblies, and capacitive touchscreens, and software, including for the automotive industry.

35.     Abruptly following Futaba's visit at Nartron, JVIS demanded from Nartron price reductions, a substantial increase in order quantity (to build a bank of parts), and an unreasonably accelerated production timeline in order to cause Nartron's breach of contract and ultimately, force the termination of JVIS's engagement of Nartron.

36.     In or around September 2012, Nartron's then-Engineering Director and Director of Technical Program Management, Thomas J. Gronski ("Gronski"), terminated his employment at Nartron and became an independent contractor for JVIS. Gronski thereafter disclosed confidential information to further the illicit plan to have Futaba produce the PCBAs for JVIS in place of Nartron.

37. In or around October 2012, JVIS demanded samples of the PCBAs from Nartron identifying all components, which would then be provided to Futaba. Nartron provided such samples and, in turn, JVIS provided Nartron's PCBAs to Futaba unbeknownst to Nartron.

38. On or around July 9, 2013, JVIS instituted litigation against Nartron in the State of Michigan in the Circuit Court for the County of Macomb, Case No. 13-2742-CK (the "Prior Litigation"), alleging that Nartron failed to perform its obligations under the parties' agreement. On or around November 11, 2013, Nartron filed a counter and third-party complaint naming FCA as a third-party defendant in the Prior Litigation, alleging misappropriation of Nartron's trade secrets and other claims.

39. During the Prior Litigation, JVIS and FCA separately admitted that Futaba reverse engineered Nartron's PCBAs, including the software code that is the subject of the Registered Work. FCA admitted that it reverse engineered Nartron's PCBAs. Further, FCA provided documentation expressly indicating that Futaba "pulled" software from Nartron's PCBAs so it could reverse engineer and examine Nartron's software code.

40. On information and belief, Futaba copied parts of Nartron's software code that it "pulled" in creating software code for the Nartron-designed Futaba replacement PCBAs. On information and belief, Futaba did so though a process that included "disassembly" or "decompilation" to transform the machine-readable object code contained in the memory of Nartron's PCBAs into human-readable source code. With the human-readable source code that Futaba from its intermediate copying from Nartron's machine-readable object code (which was contained in a fixed memory media), Futaba created its own source code for the Nartron-designed replacement PCBAs, which included unauthorized copies of material parts of Nartron's software code, including header files and other files that control various

aspects of a center console display.

41.     On information and belief, Futaba received notice of the '589 Patent during the Prior Litigation. As alleged, the '036 Application, from which the '589 Patent issued, serves as the priority document for the other Patents-in-Suit and contains the same general disclosures thereof.

42.     At no point did Nartron sell the Registered Work or the Patents-in-Suit to JVIS or Defendants, or otherwise authorize JVIS or Defendants to use the Registered Work or the Patents-in-Suit, nor did Defendants seek such permission from Nartron. Instead, Nartron retained and still retains all right, title, and interest in and to the Registered Work and the Patents-in-Suit. Despite lacking the authority to do so, Defendants have copied and continue to copy the Registered Work and Patents-in-Suit on printed circuit board assemblies for use in integrated center stacks.

43.     On information and belief, Futaba has made and sold, and still makes and sells, the Nartron-designed PCBAs to JVIS containing the patented arrangement and the copyrighted software code that Futaba copied from Nartron's PCBAs and then copied into its own software code for the Nartron-designed PCBAs, and has done so continually since replacing Nartron under the JVIS contract.

44.     Given Defendants' actual and constructive knowledge of Nartron's rights, including by way of Futaba's admission that it "reverse engineered" Nartron's PCBAs, and Nartron directly informing Futaba of at least the '589 Patent during the Prior Litigation, Defendants' acts of infringement are willful.

45.     The natural and probable foreseeable result of Defendants' wrongful conduct has been to deprive Nartron of the benefits of selling products featuring the Registered Work and the Patents-in-Suit and to injure Nartron's relationship with present and prospective customers. Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of Nartron's copyrights and patents, and in conscious disregard for Nartron's exclusive rights in its Registered Work and

Patents-in-Suit.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement – 17 U.S.C. § 501

46.     Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

47.     Nartron is the sole author of the Registered Work and the exclusive owner of all rights associated with the Registered Work. The Registered Work is comprised of wholly original material and has been deemed by the United States Copyright Office to be copyrightable subject matter under the copyright laws of the United States.

48.     With full knowledge of Nartron's rights in the Registered Work and with reckless disregard for Nartron's copyright, Defendants have willfully infringed and continue to willfully infringe Nartron's copyright in the Registered Work by reproducing, creating derivative works and/or distributing (and authorizing the reproduction, public display, creating derivative works, and distributing by third parties) the Registered Work on various printed circuit board assemblies without Nartron's consent, approval, or license.

49.     Defendants' actions constitute a direct violation of the exclusive rights under copyright with respect to the Registered Work under 17 U.S.C. § 106.

50.     Defendants have benefited from their infringement of the Registered Work through sales, brand promotion, and corporate goodwill. As a result of Defendants' infringement, Nartron has suffered monetary damages, as well as damages to its goodwill and reputation.

51.     Pursuant to 17 U.S.C. § 504(b), Nartron is entitled to actual damages, including Defendants' profits from infringement in connection with the Registered Work, in an amount to be proven at trial.

52.     Defendants' conduct is causing and, unless enjoined and restrained by

this Court, will continue to cause Nartron great and irreparable injury that cannot fully be compensated or measured in money. Nartron has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Nartron is entitled to injunctive relief prohibiting Defendants from further infringing the Registered Work and ordering Defendants to destroy all copies of their products made in violation of Nartron's exclusive rights.

## **SECOND CLAIM FOR RELIEF**

### **Direct Patent Infringement of the '589 Patent – 35 U.S.C. § 271(a)**

53.     Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

54.     Defendants have directly infringed at least one claim of the '589 Patent by making, selling, offering for sale, using, and/or importing in the United States PCBAs which were reverse engineered from Nartron's own designs (the "Accused Instrumentalities") during the lifetime of the '589 Patent.

55.     For example[1], claim 1 of the '589 Patent recites:

An inventory of vehicle accessory control components, comprising:

a substrate having an overall perimeter shape including a first circuit board substrate and a second circuit board substrate;

a plurality of first circuit boards that each have the first circuit board substrate with a plurality of circuit elements supported on the first circuity board substrate, the first circuit board substrate including an outer edge profile and a plurality of first deviations from the outer edge profile;

a plurality of second circuit boards that each have the second

---

[1] The specific patent claims identified in this Complaint are merely exemplary, not exhaustive. Nartron will provide its full list of the asserted claims at the appropriate time(s) under this Court's Local Rules and the Scheduling Order.

circuit board substrate with a plurality of circuit elements supported on the second circuit board substrate, the second circuit board substrate including the outer edge profile and a plurality of second deviations from the outer edge profile, at least one portion of the second deviations being different than the first deviations;

wherein each first circuit board substrate and each second circuit board substrate are arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate; and

wherein the outer edge profile is configured to facilitate one of the first and second circuit boards being received in a housing having a correspondingly shaped perimeter that generally conforms to the outer edge profile; the first deviations are configured to cooperate with first features on a housing to allow one of the first circuit boards to be received into a housing having the first features but not to be received into another housing that does not have the first features; and the second deviations are configured to cooperate with second features on a housing to allow one of the second circuit boards to be received into a housing having the second features but not to be received into another housing that does not have the second features.

56. The Accused Instrumentalities satisfy each and every element of this claim, either literally or under the doctrine of equivalents:

a. To the extent that the preamble is limiting (which Nartron does not concede), the Accused Instrumentalities include an "inventory" of "vehicle accessory control components" – i.e., center stack consoles which allow access and control to a variety of vehicle accessories, such as audio, temperature control, and navigation – because, at all relevant times, Futaba was engaged by JVIS to manufacture such components

for at least the 2014 Chrysler Jeep Grand Cherokee.

b.      The Accused Instrumentalities include "a substrate having an overall perimeter shape" and "a first circuit board substrate and a second circuit board substrate":



c.

The "inventory" of the Accused Instrumentalities has "a plurality of first circuit boards that each have the first circuit board substrate" and "a plurality of second circuit boards that each have the second circuit board substrate," as shown in the labelled image of an Accused Instrumentality above. The first circuit board substrate and the second circuit board substrate of the Accused Instrumentalities each have "a plurality of circuit elements" supported thereon, an outer edge profile and a plurality of first deviations and second deviations, respectively, from the outer edge profile, as shown below.



d.   The Accused Instrumentalities include "second deviations being different than the first deviations," as shown below;



e.   As shown in each of the above labelled images, the first circuit board substrate and second circuit board substrate of the Accused Instrumentalities are "arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate."

f.   The "outer edge profile" of the Accused Instrumentalities is

configured to be received in a "housing having a correspondingly shaped perimeter that generally conforms to the outer edge profile." *See* labelled image below.



On information and belief, the "first deviations" of the Accused Instrumentalities are configured to cooperate with first features on a housing to allow one of the first circuit boards to be received into a housing having the first features but not to be received into another housing that does not have the first features. Similarly, on information and belief, the "second deviations" of the Accused Instrumentalities are configured to cooperate with second features on a housing to allow one of the second circuit boards to be received into a housing having the second features but not to be received into another housing that does not have the second features.

57.     Because all elements of claim 1 of the '589 Patent are literally, or at least equivalently, present in the Accused Instrumentalities, Defendants directly infringe that claim when they make, sell, offer for sale, use, or import the Accused Instrumentalities in the United States.

58.     On information and belief, Defendants have made, sold, offered for

sale, used, and/or imported the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '589 Patent.

59.    In or around 2012, JVIS terminated its agreement with Nartron whereunder Nartron manufactured PCBAs for the 2014 Chrysler Jeep Grand Cherokee. Instead, using Nartron's patented arrangement, JVIS engaged Futaba to manufacture PCBAs for at least the 2014 Chrysler Jeep Grand Cherokee in addition to other Dodge and Chrysler vehicles. Thus, Defendants have enjoyed United States sales of the Accused Instrumentalities during the lifetime of the Patents-in-Suit, including the '589 Patent, constituting direct infringement of at least claim 1 of that patent.

60.    In addition to sales and offers to sell, on information and belief, Defendants also made the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '589 Patent. For instance, on information and belief, Defendants made the Accused Instrumentalities in the United States by manufacturing one or more of the components thereof in the United States, and/or by assembling the Accused Instrumentalities in the United States. Such making of the Accused Instrumentalities in the United States constituted direct infringement of claims of the Patents-in-Suit, including claim 1 of the '589 Patent.

61.    On information and belief, Defendants also used the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '589 Patent. For instance, on information and belief, Defendants used the Accused Instrumentalities in the United States in connection with internal testing and research and development. Such use of the Accused Instrumentalities in the United States constitutes direct infringement of claims of the Patents-in-Suit, including claim 1 of the '589 Patent.

62.    Accordingly, under 35 U.S.C. § 271(a), Defendants are liable to Nartron for their past, present, and ongoing direct infringement of the '589 Patent.

### THIRD CLAIM FOR RELIEF

**Induced Infringement of the '589 Patent – 35 U.S.C. § 271(b)**

63.     Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

64.     Defendants have unlawfully induced infringement of at least one claim of the '589 Patent by selling the Accused Instrumentalities to United States customers, including JVIS, all while knowing of the '589 Patent, and knowing (or being willfully blind) that making, using, selling, and/or offering to sell the Accused Instrumentalities infringes at least one claim of the '589 Patent.  Additionally, on information and belief, Futaba Japan has unlawfully induced infringement of at least one claim of the '589 Patent by actively encouraging or facilitating FCA's direct infringement by, among other things, providing funding, advertising, and instructions on the use of the Accused Instrumentalities, and by profiting from FCA's sales of the Accused Instrumentalities.

65.     As shown above, Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '589 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '589 Patent. Such using constitutes direct infringement of at least claim 1 of the '589 Patent.

66.     Moreover, when Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '589 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '589 Patent.

67.     Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '589 Patent when they use, sell, and/or offer for sale the Accused

Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

68.     On information and belief, Defendants provide instruction and/or assistance to customers – e.g., JVIS – which shows them how to use the Accused Instrumentalities in their intended fashion. Defendants' instruction and/or assistance constitutes acts that induce end-user customers to commit direct infringement of at least claim 1 of the '589 Patent.

69.     When committing these inducing acts, Defendants were aware of the Patents-in-Suit. Defendants have been aware of the Patents-in-Suit since at least 2017, when the existence of the '589 Patent was mentioned in testimony of the Prior Litigation.

70.     On information and belief, when Defendants committed the inducing acts complained of above, they also knew – or were willfully blind – that their customers' use, offering for sale, and sale of the Accused Instrumentalities infringed at least one claim of the Patents-in-Suit, including at least one claim of the '589 Patent. In or around 2013, Defendants reverse engineered Nartron's PCBAs, a fact which Defendants admitted during the Prior Litigation. Also during the Prior Litigation, Defendants gained actual knowledge of the Patents-in-Suit.

71.     Therefore, for the foregoing reasons, Defendants are liable to Nartron for induced infringement of the '589 Patent under 35 U.S.C. § 271(b).

## FOURTH CLAIM FOR RELIEF

### Contributory Patent Infringement of the '589 Patent – 35 U.S.C. § 271(c)

72.     Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

73.     Defendants have unlawfully contributed to infringement of the '589 Patent by making, selling, and distributing the Accused Instrumentalities in the United States, where the Accused Instrumentalities constitute a material part of the

claimed invention, where Defendants knew the Accused Instrumentalities were especially adapted for use in infringement of the '589 Patent, and where the Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use.

74. Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '589 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '589 Patent. Such use constitutes direct infringement of at least claim 1 of the '589 Patent.

75. When Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '589 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '589 Patent.

76. Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '589 Patent when they use, sell, or offer for sale the Accused Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

77. Since around 2013, Defendants have continually sold and offered to sell the Accused Instrumentalities to at least JVIS in the United States.

78. The Accused Instrumentalities sold by Defendants constitute a material part of the claimed invention of at least claim 1 of the '589 Patent. Indeed, the Accused Instrumentalities include *every* part of the invention claimed in at least claim 1 of the '589 Patent.

79. Defendants knew – or else were willfully blind – that their customers' ordinary use, offering for sale, and sale of the Accused Instrumentalities constitutes

direct infringement of at least claim 1 of the '589 Patent. Thus, Defendants knew that the Accused Instrumentalities were especially adapted for use in an infringement of the '589 Patent.

80. Finally, the Accused Instrumentalities are not staple articles of commerce suitable for substantial non-infringing use. Rather, the ***only*** substantial use of the Accused Instrumentalities is to assemble and use them in the manner intended and directed by Defendants, which constitutes direct infringement of at least claim 1 of the '589 Patent.

81. Accordingly, for the foregoing reasons, Defendants are liable to Nartron for contributory infringement of the '589 Patent in violation of 35 U.S.C. § 271(c).

## FIFTH CLAIM FOR RELIEF

### Direct Patent Infringement of the '185 Patent – 35 U.S.C. § 271(a)

82. Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

83. Defendants have directly infringed at least one claim of the '185 Patent by making, selling, offering for sale, using, and/or importing in the United States PCBAs which were reverse engineered from Nartron's own designs (the "Accused Instrumentalities") during the lifetime of the '185 Patent.

84. For example , claim 1 of the '185 Patent recites:

An inventory of vehicle accessory control components, comprising:

a substrate having an overall perimeter shape including a first circuit board substrate and a second circuit board substrate;

a plurality of first circuit boards that each have the first circuit board substrate with a plurality of circuit elements supported on the first circuity board substrate, the first circuit board substrate including an outer edge profile and a plurality of first deviations from the outer edge profile;

a plurality of second circuit boards that each have the second circuit board substrate with a plurality of circuit elements supported on the second circuit board substrate, the second circuit board substrate including the outer edge profile and a plurality of second deviations from the outer edge profile, at least one portion of the second deviations being different than the first deviations;

wherein each first circuit board substrate and each second circuit board substrate are arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate; and

wherein the outer edge profile is configured to facilitate one of the first and second circuit boards being received in a housing having a correspondingly shaped perimeter that generally conforms to the outer edge profile; the first deviations are configured to cooperate with first features on a housing to allow one of the first circuit boards to be received into a housing having the first features but not to be received into another housing that does not have the first features; and the second deviations are configured to cooperate with second features on a housing to allow one of the second circuit boards to be received into a housing having the second features but not to be received into another housing that does not have the second features;

wherein the plurality of circuit elements of at least the plurality of first circuit boards comprise a plurality of switches; and

a single pad area made of circuit board conductor on the first circuit board substrate in a location for each of the plurality of switches.

85.    The Accused Instrumentalities satisfy each and every element of this claim, either literally or under the doctrine of equivalents:

a.    To the extent that the preamble is limiting (which Nartron does not concede), the Accused Instrumentalities include an "inventory" of

"vehicle accessory control components" – i.e., center stack consoles which allow access and control to a variety of vehicle accessories, such as audio, temperature control, and navigation – because, at all relevant times, Futaba was engaged by JVIS to manufacture such components for at least the 2014 Chrysler Jeep Grand Cherokee.

b.   The Accused Instrumentalities include "a substrate having an overall perimeter shape" and "a first circuit board substrate and a second circuit board substrate":



c.   The "inventory" of the Accused Instrumentalities has "a plurality of first circuit boards that each have the first circuit board substrate" and "a plurality of second circuit boards that each have the second circuit board substrate," as shown in the labelled image of an Accused Instrumentality above. The first circuit board substrate and the second circuit board substrate of the Accused Instrumentalities each have "a plurality of circuit elements" supported thereon, an outer edge profile and a plurality of first deviations and second deviations, respectively, from the outer edge profile, as shown below.



d.     The Accused Instrumentalities include "second deviations being different than the first deviations," as shown below;



e.     As shown in each of the above labelled images, the first circuit board substrate and second circuit board substrate of the Accused Instrumentalities are "arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate."

f.     The "outer edge profile" of the Accused Instrumentalities is configured to be received in a "housing having a correspondingly shaped

perimeter that generally conforms to the outer edge profile." See labelled image below.



On information and belief, the "first deviations" of the Accused Instrumentalities are configured to cooperate with first features on a housing to allow one of the first circuit boards to be received into a housing having the first features but not to be received into another housing that does not have the first features. Similarly, on information and belief, the "second deviations" of the Accused Instrumentalities are configured to cooperate with second features on a housing to allow one of the second circuit boards to be received into a housing having the second features but not to be received into another housing that does not have the second features.

     g.    The Accused Instrumentalities comprise "a plurality of switches" on the "plurality of first circuit boards" because such switches regulate the "plurality of first circuit elements" by opening or closing an electrical circuit, thereby causing an appropriate electrical signal to be provided to the controller; and

     h.    As shown in each of the above labelled images, the Accused

Instrumentalities comprise at least "a single pad area made of circuit board conductor on the first circuit board substrate in a location for each of the plurality of switches".

86.     Because all elements of claim 1 of the '185 Patent are literally, or at least equivalently, present in the Accused Instrumentalities, Defendants directly infringe that claim when they make, sell, offer for sale, use, or import the Accused Instrumentalities in the United States.

87.     On information and belief, Defendants have made, sold, offered for sale, used, and/or imported the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '185 Patent.

88.     In or around 2012, JVIS terminated its agreement with Nartron whereunder Nartron manufactured PCBAs for the 2014 Chrysler Jeep Grand Cherokee. Instead, using Nartron's patented arrangement, JVIS engaged Futaba to manufacture PCBAs for at least the 2014 Chrysler Jeep Grand Cherokee. Thus, Defendants have enjoyed United States sales of the Accused Instrumentalities during the lifetime of the Patents-in-Suit, including the '185 Patent, constituting direct infringement of at least claim 1 of that patent.

89.     In addition to sales and offers to sell, on information and belief, Defendants also made the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '185 Patent. For instance, on information and belief, Defendants made the Accused Instrumentalities in the United States by manufacturing one or more of the components thereof in the United States, and/or by assembling the Accused Instrumentalities in the United States. Such making of the Accused Instrumentalities in the United States constitutes direct infringement of claims of the Patents-in-Suit, including claim 1 of the '185 Patent.

90.     On information and belief, Defendants also used the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit,

including the '185 Patent. For instance, on information and belief, Defendants used the Accused Instrumentalities in the United States in connection with internal testing and research and development. Such use of the Accused Instrumentalities in the United States constituted direct infringement of claims of the Patents-in-Suit, including claim 1 of the '185 Patent.

91.     Accordingly, under 35 U.S.C. § 271(a), Defendants are liable to Nartron for their past, present, and ongoing direct infringement of the '185 Patent.

## SIXTH CLAIM FOR RELIEF

### Induced Patent Infringement of the '185 Patent – 35 U.S.C. § 271(b)

92.     Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

93.     Defendants have unlawfully induced infringement of at least one claim of the '185 Patent by selling the Accused Instrumentalities to United States customers, including JVIS, all while knowing of the '185 Patent, and knowing (or being willfully blind) that making, using, selling, and/or offering to sell the Accused Instrumentalities infringes at least one claim of the '185 Patent.  Additionally, on information and belief, Futaba Japan has unlawfully induced infringement of at least one claim of the '185 Patent by actively encouraging or facilitating FCA's direct infringement by, among other things, providing funding, advertising, and instructions on the use of the Accused Instrumentalities, and by profiting from FCA's sales of the Accused Instrumentalities.

94.     Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '185 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '185 Patent. Such using constitutes direct infringement of at least claim 1 of the '185 Patent.

95.     Moreover, when Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '185 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '185 Patent.

96.     Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '185 Patent when they use, sell, and/or offer for sale the Accused Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

97.     On information and belief, Defendants provide instruction and/or assistance to customers – e.g., JVIS – which shows them how to use the Accused Instrumentalities in their intended fashion. Defendants' instruction and/or assistance constitutes acts that induce end-user customers to commit direct infringement of at least claim 1 of the '185 Patent.

98.     When committing these inducing acts, Defendants were aware of the Patents-in-Suit. Defendants have been aware of the Patents-in-Suit since at least 2017, when the existence of the '185 Patent was mentioned in testimony of the Prior Litigation.

99.     On information and belief, when Defendants committed the inducing acts complained of above, they also knew – or were willfully blind – that their customers' use, offering for sale, and sale of the Accused Instrumentalities infringed at least one claim of the Patents-in-Suit, including at least one claim of the '185 Patent. In or around 2013, Defendants reverse engineered Nartron's PCBAs, a fact which Defendants admitted during the Prior Litigation. Also during the Prior Litigation, Defendants gained actual knowledge of the Patents-in-Suit.

100.    Therefore, for the foregoing reasons, Defendants are liable to Nartron for induced infringement of the '185 Patent under 35 U.S.C. § 271(b).

## SEVENTH CLAIM FOR RELIEF

**Contributory Patent Infringement of the '185 Patent – 35 U.S.C. § 271(c)**

101.   Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

102.   Defendants have unlawfully contributed to infringement of the '185 Patent by making, selling, and distributing the Accused Instrumentalities in the United States, where the Accused Instrumentalities constitute a material part of the claimed invention, where Defendants knew the Accused Instrumentalities were especially adapted for use in infringement of the '185 Patent, and where the Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use.

103.   Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '185 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '185 Patent. Such use constitutes direct infringement of at least claim 1 of the '185 Patent.

104.   When Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '185 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '185 Patent.

105.   Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '185 Patent when they use, sell, or offer for sale the Accused Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

106.   Since around 2013, Defendants have continually sold and offered to sell

the Accused Instrumentalities to at least JVIS in the United States.

107. The Accused Instrumentalities sold by Defendants constitute a material part of the claimed invention of at least claim 1 of the '185 Patent. Indeed, the Accused Instrumentalities include *every* part of the invention claimed in at least claim 1 of the '185 Patent.

108. Defendants knew – or else were willfully blind – that their customers' ordinary use, offering for sale, and sale of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '185 Patent. Thus, Defendants knew that the Accused Instrumentalities were especially adapted for use in an infringement of the '185 Patent.

109. Finally, the Accused Instrumentalities are not staple articles of commerce suitable for substantial non-infringing use. Rather, the *only* substantial use of the Accused Instrumentalities is to assemble and use them in the manner intended and directed by Defendants, which constitutes direct infringement of at least claim 1 of the '185 Patent.

110. Accordingly, for the foregoing reasons, Defendants are liable to Nartron for contributory infringement of the '185 Patent in violation of 35 U.S.C. § 271(c).

## EIGHTH CLAIM FOR RELIEF

### Direct Patent Infringement of the '762 Patent – 35 U.S.C. § 271(a)

111. Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

112. Defendants have directly infringed at least one claim of the '762 Patent by making, selling, offering for sale, using, and/or importing in the United States PCBAs which were reverse engineered from Nartron's own designs (the "Accused Instrumentalities") during the lifetime of the '762 Patent.

113. For example, claim 1 of the '762 Patent recites:

An vehicle accessory control component, comprising:

a substrate having an overall perimeter shape including a first circuit board substrate and a second circuit board substrate;

the first circuit board substrate having a plurality of circuit elements supported thereon and including an outer edge profile and a plurality of first deviations along the outer edge profile;

the second circuit board substrate having a plurality of circuit elements supported thereon and including an outer edge profile and a plurality of second deviations along the outer edge profile, at least one of the second deviations being different than the first deviations;

wherein the first circuit board substrate and the second circuit board substrate are arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate;

wherein the outer edge profile of the first and second circuit board substrates are received in a housing having a correspondingly shaped perimeter that generally conforms to the outer edge profiles;

wherein the first deviations are configured to cooperate with first features on the housing to allow the first circuit board substrate to be received into the housing having the first features; and

 wherein the second deviations are configured to cooperate with second features on the housing to allow the second circuit board substrate to be received into the housing having the second features.

114. The Accused Instrumentalities satisfy each and every element of this claim, either literally or under the doctrine of equivalents:

a. To the extent that the preamble is limiting (which Nartron does not concede), the Accused Instrumentalities include a "vehicle accessory control component" – i.e., a center stack console which

allows access and control to a variety of vehicle accessories, such as audio, temperature control, and navigation – because, at all relevant times, Futaba was engaged by JVIS to manufacture such components for at least the 2014 Chrysler Jeep Grand Cherokee.

b.     The Accused Instrumentalities include "a substrate having an overall perimeter shape" and "a first circuit board substrate and a second circuit board substrate":



c.     The first circuit board substrate and the second circuit board substrate of the Accused Instrumentalities each have "a plurality of circuit elements" supported thereon, an outer edge profile and a plurality of first deviations and second deviations, respectively, from the outer edge profile, as shown below.



d.      The Accused Instrumentalities include "second deviations being different than the first deviations," as shown below;



e.      As shown in each of the above labelled images, the first circuit board substrate and second circuit board substrate of the Accused Instrumentalities are "arranged in a plane and selectively movable relative to each other to form the overall perimeter shape of the substrate."

f.      The "outer edge profile" of the Accused Instrumentalities is

configured to be received in a "housing having a correspondingly shaped perimeter that generally conforms to the outer edge profile." *See* labelled image below.



g.      On information and belief, and as shown in the above labelled image, the "first deviations" of the Accused Instrumentalities are configured to cooperate with first features on a housing to allow one of the first circuit boards to be received into a housing having the first features.

h.      Similarly, on information and belief, and as shown in the above labelled image, the "second deviations" of the Accused Instrumentalities are configured to cooperate with second features on a housing to allow one of the second circuit boards to be received into a housing having the second features.

115.   Because all elements of claim 1 of the '762 Patent are literally, or at least equivalently, present in the Accused Instrumentalities, Defendants directly infringe that claim when they make, sell, offer for sale, use, or import the Accused Instrumentalities in the United States.

116.   On information and belief, Defendants have made, sold, offered for

sale, used, and/or imported the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '762 Patent.

117.  In or around 2012, JVIS terminated its agreement with Nartron whereunder Nartron manufactured PCBAs for the 2014 Chrysler Jeep Grand Cherokee. Instead, using Nartron's patented arrangement, JVIS engaged Futaba to manufacture PCBAs for at least the 2014 Chrysler Jeep Grand Cherokee. Thus, Defendants have enjoyed United States sales of the Accused Instrumentalities during the lifetime of the Patents-in-Suit, including the '762 Patent, constituting direct infringement of at least claim 1 of that patent.

118.  In addition to sales and offers to sell, on information and belief, Defendants also made the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '762 Patent. For instance, on information and belief, Defendants made the Accused Instrumentalities in the United States by manufacturing one or more of the components thereof in the United States, and/or by assembling the Accused Instrumentalities in the United States. Such making of the Accused Instrumentalities in the United States constitutes direct infringement of claims of the Patents-in-Suit, including claim 1 of the '762 Patent.

119.  On information and belief, Defendants also used the Accused Instrumentalities in the United States during the lifetime of the Patents-in-Suit, including the '762 Patent. For instance, on information and belief, Defendants used the Accused Instrumentalities in the United States in connection with internal testing and research and development. Such use of the Accused Instrumentalities in the United States constitutes direct infringement of claims of the Patents-in-Suit, including claim 1 of the '762 Patent.

120.  Accordingly, under 35 U.S.C. § 271(a), Defendants are liable to Nartron for their past, present, and ongoing direct infringement of the '762 Patent.

**NINTH CLAIM FOR RELIEF**

**Induced Patent Infringement of the '762 Patent – 35 U.S.C. § 271(b)**

121.   Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

122.   Defendants have unlawfully induced infringement of at least one claim of the '762 Patent by selling the Accused Instrumentalities to United States customers, including JVIS, all while knowing of the '762 Patent, and knowing (or being willfully blind) that making, using, selling, and/or offering to sell the Accused Instrumentalities infringes at least one claim of the '762 Patent.  Additionally, on information and belief, Futaba Japan has unlawfully induced infringement of at least one claim of the '762 Patent by actively encouraging or facilitating FCA's direct infringement by, among other things, providing funding, advertising, and instructions on the use of the Accused Instrumentalities, and by profiting from FCA's sales of the Accused Instrumentalities.

123.   Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '762 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '762 Patent. Such using constitutes direct infringement of at least claim 1 of the '762 Patent.

124.   Moreover, when Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '762 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '762 Patent.

125.   Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '762 Patent when they use, sell, and/or offer for sale the Accused

Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

126.   On information and belief, Defendants provide instruction and/or assistance to customers – e.g., JVIS – which shows them how to use the Accused Instrumentalities in their intended fashion. Defendants' instruction and/or assistance constitutes acts that induce end-user customers to commit direct infringement of at least claim 1 of the '762 Patent.

127.   When committing these inducing acts, Defendants were aware of the Patents-in-Suit. Defendants have been aware of the Patents-in-Suit since at least 2017, when the existence of the '762 Patent was mentioned in testimony of the Prior Litigation.

128.   On information and belief, when Defendants committed the inducing acts complained of above, they also knew – or were willfully blind – that their customers' use, offering for sale, and sale of the Accused Instrumentalities infringed at least one claim of the Patents-in-Suit, including at least one claim of the '762 Patent. In or around 2013, Defendants reverse engineered Nartron's PCBAs, a fact which Defendants admitted during the Prior Litigation. Also during the Prior Litigation, Defendants gained actual knowledge of the Patents-in-Suit.

129.   Therefore, for the foregoing reasons, Defendants are liable to Nartron for induced infringement of the '762 Patent under 35 U.S.C. § 271(b).

## TENTH CLAIM FOR RELIEF

### Contributory Patent Infringement of the '762 Patent – 35 U.S.C. § 271(c)

130.   Nartron hereby restates and realleges the allegations of the preceding paragraphs and incorporates them by reference.

131.   Defendants have unlawfully contributed to infringement of the '762 Patent by making, selling, and distributing the Accused Instrumentalities in the United States, where the Accused Instrumentalities constitute a material part of the

claimed invention, where Defendants knew the Accused Instrumentalities were especially adapted for use in infringement of the '762 Patent, and where the Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use.

132.  Defendants' Accused Instrumentalities satisfy all elements of at least one claim of the '762 Patent. Accordingly, when Defendants' customers – e.g., JVIS – use the Accused Instrumentalities in vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they use a component that satisfies all the elements of at least claim 1 of the '762 Patent. Such use constitutes direct infringement of at least claim 1 of the '762 Patent.

133.  When Defendants' customers – e.g., JVIS – actually sell or offer to sell instrument panel bezels for vehicles, such as the 2014 Chrysler Jeep Grand Cherokee, they are selling or offering for sale an arrangement that satisfies all elements of at least claim 1 of the '762 Patent. Such selling or offering for sale constitutes direct infringement of at least claim 1 of the '762 Patent.

134.  Accordingly, Defendants' customers – e.g., JVIS – directly infringe at least claim 1 of the '762 Patent when they use, sell, or offer for sale the Accused Instrumentalities in the manner specifically intended and directed by Defendants in the United States.

135.  Since around 2013, Defendants have continually sold and offered to sell the Accused Instrumentalities to at least JVIS in the United States.

136.  The Accused Instrumentalities sold by Defendants constitute a material part of the claimed invention of at least claim 1 of the '762 Patent. Indeed, the Accused Instrumentalities include every part of the invention claimed in at least claim 1 of the '762 Patent.

137.  Defendants knew – or else were willfully blind – that their customers' ordinary use, offering for sale, and sale of the Accused Instrumentalities constitutes

direct infringement of at least claim 1 of the '762 Patent. Thus, Defendants knew that the Accused Instrumentalities were especially adapted for use in an infringement of the '762 Patent.

138. Finally, the Accused Instrumentalities are not staple articles of commerce suitable for substantial non-infringing use. Rather, the ***only*** substantial use of the Accused Instrumentalities is to assemble and use them in the manner intended and directed by Defendants, which constitutes direct infringement of at least claim 1 of the '762 Patent.

139. Accordingly, for the foregoing reasons, Defendants are liable to Nartron for contributory infringement of the '762 Patent in violation of 35 U.S.C. § 271(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Nartron respectfully requests judgment as follows:

A.     Entry of a judgment that Defendants have infringed the copyright in the Registered Work;

B.     Entry of a judgment that Defendants have infringed the Patents-in-Suit;

C.     Entry of a judgment that Defendants' infringement of the Patents-in-Suit is willful and egregious;

D.     Under 17 U.S.C. § 502, an order preliminarily and permanently restraining and enjoining Defendants, its officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from further copying or creating derivative works of the Registered Work;

E.     Under 35 U.S.C. § 283, an order preliminarily and permanently restraining and enjoining Defendants, its officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from further infringement of the Patents-in-Suit;

F.     Under 17 U.S.C. §§ 503 and 1203(b)(6), an order requiring Defendants

to destroy all infringing copies of the Registered Work, including all digital copies or any other means by which they could be used against by Defendants without Nartron's authorization, as well as all related records and documents that are in Defendants' possession, custody, or control, now and in the future;

G.     Under 17 U.S.C. § 504, an award of actual damages and all of Defendants' profits derived from the unauthorized use of the Registered Work;

H.     Under 35 U.S.C. § 284, an award of damages adequate to compensate Nartron for Defendants' infringement of the Patents-in-Suit, in an amount to be determined at trial;

I.     Under 35 U.S.C. § 284, an order increasing Nartron's damages up to three times the amount assessed;

J.     Under 17 U.S.C. § 1203(b)(4)-(5), an award to Nartron of attorneys' fees, court costs, and other reasonable expenses associated with this lawsuit, in an amount to be determined at trial;

K.     Entry of a judgment that this is an exceptional case under 35 U.S.C. § 285, and an award of attorneys' fees and costs associated with this lawsuit, in an amount to be determined at trial;

L.     An award to Nartron of pre- and post-judgment interest at the maximum legal rate; and

M.     For such other relief that the Court may deem necessary, just, and proper.

## **JURY TRIAL DEMAND**

Nartron hereby demands a trial by jury in this case on all issues so triable.

DATED:  November 21, 2024          Respectfully submitted,


                                   By:   */s/ Lawrence M. Hadley*

E. Thomas McCarthy, Jr. (MI Bar P28714)
tmccarthy@srr.com
SMITY HAUGHEY RICE & ROEGGE
100 Monroe Center NW
Grand Rapids, Michigan 49503-2802
T: 616.774.8000  F: 616.774.2461

Lawrence M. Hadley (CA Bar 157728)
lhadley@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Blvd., 19th Fl.
Los Angeles, California 90067
T: 310.553.3000  F: 310.556.2920

Attorneys for Plaintiff
UUSI, LLC d/b/a Nartron