UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UUSI, LLC,

                Plaintiff,                            Case No. 2:24-cv-13104

v.                                       Honorable Susan K. DeClercq
                                              United States District Judge

FUTABA CORPORATION OF
AMERICA, et al.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FUTABA CORPORATION OF AMERICA'S MOTION TO DISMISS (ECF No. 13)**

Printed circuit board assemblies (PCBAs) are at the center of this patent and copyright infringement case. Plaintiff Nartron[1]—a Michigan corporation—engineers and produces PCBAs that are designed specifically for use in the center stack of vehicles—the core dashboard area from which drivers control things like interior climate, audio, navigation, and other such electronic features. According to Plaintiff, Defendants have infringed on both Plaintiff's patent for the physical design of these PCBAs and Plaintiff's copyright for the software code within these PCBAs.

_____

[1] Although Plaintiff identifies itself in its complaint as UUSI, LLC, it conducts business under the name "Nartron," and thus will be referred to as such in this opinion and order. *See* ECF No. 1 at PageID.1 (explaining that UUSI conducts business under the name "Nartron.").

Now before this Court is Defendant Futaba Corporation of America's ("Futaba America") motion to dismiss Plaintiff's complaint. Futaba America argues that UUSI's patent-infringement claims must be dismissed under the doctrine of collateral estoppel because the issue of who owned the intellectual property related to the PCBAs was already litigated in state court. And it argues that Plaintiff's copyright infringement claim must be dismissed because it was filed beyond the statute of limitations.

But, as explained below, Futaba America's motion will only be narrowly granted to the extent that any copyright infringement claims relying on alleged acts of infringement beyond the statute of limitations will be dismissed. It will be denied in all other respects, as not *all* of UUSI's copyright claims are barred, and none of its patent infringement claims are barred.

## I. BACKGROUND

### A. 2012–2013: Initial Engineering and Production of PCBAs

Plaintiff Nartron is a Michigan LLC based in Reed City, Michigan. ECF No. 1 at PageID.1. Nartron describes itself as "a leading innovator in the design, development, manufactur[ing], and marketing of electronic systems and components" for myriad vehicles. *Id.* at PageID.2.

In 2011, JVIS—a nonparty to this litigation—hired Nartron "to engineer and produce the PCBAs to integrate into JVIS'S instrument panel bezels" that would

eventually be used in several vehicles manufactured by Stellantis, including the 2014-21 Dodge Durango, the 2014-15 Jeep Grand Cherokee, and certain Dodge Charger and Chrysler 3000 models. *Id.* at PageID.3.

In July 2012, JVIS "scheduled a site visit for Futaba"[2]—a direct competitor of Nartron's—"at Nartron's facilities under the false pretense that Futaba intended to create a backseat climate control module for the 2014 Chrysler Jeep Grand Cherokee." *Id.* at PageID.8. Nartron alleges that after Futaba visited Nartron's facilities, JVIS "demanded" price reductions, a "substantial increase in order quantity (to build a bank of parts), and an unreasonably accelerated production timeline." *Id.* Nartron alleges that JVIS made these demands "to cause Nartron's breach of contract" so JVIS could terminate its agreement with Nartron. *Id.*

In September 2012, Nartron's engineering director and director of technical program management, Thomas J. Gronski, resigned from Nartron and "became an independent contractor for JVIS." *Id.* One month later, JVIS demanded samples of PCBAs from Nartron and identification of all components within the samples. *Id.* at

---

[2] In its complaint, Nartron does not distinguish between Futaba Corporation of America and Futaba Corporation. *See generally* ECF No. 1. Accordingly, this Court reasonably infers in Nartron's favor that all references to "Futaba" relate to both corporate Futaba defendants. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (noting at the motion-to-dismiss stage, the court draws all reasonable inferences in the plaintiff's favor). In reciting the facts as alleged by Plaintiff, this Court will use "Futaba" to refer Futaba Corporation of America *and* Futaba Corporation, but "Futaba America" to refer to only Futaba Corporation of America.

PageID.9. JVIS then provided these prototype PCBAs to Futaba. *Id.* Nartron alleges that JVIS also shared Nartron's design files, testing data, software code, manufacturing layouts and specifications, and production-part-approval process package materials with Futaba. *Id.* at PageID.3.

Nartron alleges that Futaba used the information JVIS provided Futaba to reverse engineer "each and every aspect" of Nartron's PCBA, "including the arrangement of the software code embedded therein." *Id.* After Futaba successfully reverse engineered Nartron's PCBA's, sometime in 2012, JVIS terminated its contract with Nartron for PCBA production and instead contracted with Futaba for PCBA production. *Id.*

### B. 2013–2017: State Court Litigation and Arbitration

In July 2013, after terminating the contract with Nartron, JVIS sued Nartron in Macomb County Circuit Court, alleging that Nartron failed to perform its contractual obligations. *Id.* at PageID.9. Four months after JVIS sued Nartron, Nartron filed a counterclaim against JVIS and a third-party complaint against Futaba America for "misappropriation of Nartron's trade secrets and other claims." *Id.*

Nartron alleges that during this state court litigation, JVIS *and* Futaba "separately admitted that Futaba reverse engineered Nartron's PCBAs, including the software code." *Id.* Nartron further alleges that Futaba produced evidence that

proved that Futaba "pulled" software from Nartron's PCBAs to examine and reverse engineer the software code. *Id.*

Notably, Nartron's complaint does not provide any information about the outcome of the state court litigation. *See generally* ECF No. 1. In its motion to dismiss, Futaba America provides its own context and commentary about the events that occurred during the state court litigation and arbitration. *See* ECF No. 13 at PageID.137–48. At this motion-to-dismiss stage, the Court will not consider Futaba America's explanation of what occurred at state court. *See id.* But because Futaba America's motion to dismiss is based on the assertion that Nartron's claims against it were already litigated in the state court litigation, this Court *will* take judicial notice of the state court opinions and orders that Futaba America attached to its motion to dismiss and that are all available on the public docket[3] to determine whether Nartron's patent and trademark claims presently before this court were already litigated and resolved by the state court. These documents include the following four documents:

| ECF No. | Title |
|---------|-------|
| 13-8 | February 29, 2016, Opinion and Order |
| 13-10 | June 14, 2016, Opinion and Order |
| 13-11 | July 28, 2016, Opinion and Order |

---

[3] At the motion-to-dismiss stage, courts may take judicial notice of matters of public record "only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

| 13-22 | November 20, 2017, Stipulated Order (which includes arbitration award as an exhibit to the order) |

Two of Nartron's positions in the state court litigation appear to be potentially relevant to its patent claims here: (1) Nartron's allegation that JVIS and Futaba America misappropriated trade secrets related to the PCBAs; and (2) Nartron's assertion that it owned the PCBA designs and software. *See generally*, ECF Nos. 13-8; 13-10; 13-11.

As to the first position, the state court dismissed Nartron's misappropriation of trade secrets claims against JVIS and Futaba in February 2016. ECF No. 13-8 at PageID.513. The state court determined that the evidence was uncontested that the PCBAs "were reverse engineered without the use of any information that was misappropriated." *Id.* at PageID.512.

As to the second position, the state court addressed Nartron's ownership of the PCBA designs and software in June 2016. *See* ECF No. 13-10. The state court determined that it was "undisputed" that JVIS purchased and thus owned the physical PCBAs it obtained during its business relationship with Nartron in 2012–13, but that "a genuine issue of material facts exists as to whether they also purchased the design, engineering and software materials." *Id.* at PageID.569–70. Thus, as of June 14, 2016, "the issue of who owns the engineering, software and other supporting material [related to the PCBAs] remain[ed] open." *Id.* at PageID.570.

Litigation continued throughout the second half of 2016, but sometime after that point, the parties submitted their remaining claims to arbitration. *See* ECF No. 13-22. The arbitration panel received evidence between May 22 and July 28, 2017, and post-hearing briefs were submitted on August 18, 2017. ECF No. 13-22 at PageID.1174. About four weeks later, the panel issued a final arbitration award. *Id.* at PageID.1174–75. The final award did not include findings of fact or conclusions of law, but merely provided the dollar amounts Nartron was to pay JVIS (and JVIS's subsidiary). *Id.* Neither Futaba America nor Futaba Corporation were mentioned in the final award. *Id.*

One week after the final arbitration award, JVIS USA LLC, JVIS Manufacturing LLC, and Futaba Corporation filed a complaint in Macomb County Circuit Court to confirm the arbitration award. *See* ECF Nos. 13-20; 13-21. On November 20, 2017, a stipulated order confirming the arbitration award was entered. ECF No. 13-22.

### C. 2014–2023: Nartron's Patents and Copyrights

While the state court litigation was ongoing, Nartron filed an application for a patent with the United States Patent and Trademark Office (USPTO) in January 2014. ECF No. 1 at PageID.6. Importantly, Nartron alleges that Futaba "received notice of" this patent application during the state court litigation. *Id.* at PageID.10.

After completing review of the January 2014 patent application, the USPTO issued patent number 9,538,589 to Nartron on January 3, 2017. *Id.* at PageID.6; *see also* ECF No. 1-2. Nartron applied for and the USPTO subsequently issued two other patents to Nartron that were continuations of the original '589 patent. ECF No. 1 at PageID.6; *see also* ECF Nos. 1-3; 1-4. The patent numbers and issue dates of all three patents-in-suit are illustrated by the table below:

| ECF Number | Patent Number | Patent Application Filed | Patent Issued |
|------------|---------------|--------------------------|---------------|
| ECF No. 1-2 | 9,538,589 | January 30, 2014 | January 3, 2017 |
| ECF No. 1-3 | 9,840,185 | November 28, 2016 | December 12, 2017 |
| ECF No. 1-4 | 10,220,762 | November 9, 2017 | March 5, 2019 |

All three patents[4] "claim an innovative vehicle accessory control arrangement" which includes "(1) a first circuit board substrate and (2) a second circuit board substrate, which are arranged in a plane and selectively movable relative to each other to form an overall perimeter shape." *Id.* at PageID.6–7.

In May 2023, Nartron registered the source code it used in the PCBAs that it sold to JVIS with the United States Copyright Office. *Id.* at PageID.6; *see also* ECF No. 1-5.

---

[4] Nartron notes that all three patents-in-suit may be summarized by reference to the disclosures of the '589 patent. ECF No. 1 at PageID.6.

### D. 2023–Present: Nartron's Patent and Copyright Litigation

In November 2024, Nartron filed this lawsuit in the United States District Court for the Eastern District of Michigan.[5] ECF No. 1. Nartron alleges that Futaba infringed on Nartron's copyright for its PCBA software code and that Futaba infringed upon three of Nartron's patents that allegedly cover the PCBAs Nartron had sold to JVIS in the past. *Id.*

In January 2025, Futaba America filed two motions to dismiss: one seeking dismissal of Nartron's entire complaint, ECF No. 13, and one seeking only dismissal of four of Nartron's patent-infringement claims, ECF No. 15. Nartron opposes both motions. *See* ECF Nos. 20; 21. But because resolution of Futaba America's first motion to dismiss could moot its second motion to dismiss, only the first motion will be addressed in this Opinion and Order.

In its first motion to dismiss, Futaba America argues that the patent infringement claims must be dismissed because they are barred by collateral

---

[5] Though not noted in Nartron's complaint, ECF No. 1, it appears Nartron first filed this lawsuit in the United States District Court for the Western District of Texas in June 2023. *See UUSI, LLC v. Futaba Corp. of Am. et al.*, 6:23-CV-00440-ADA, Comp., ECF No. 1 (W.D. Tex. June 9, 2023); *see also* ECF No. 13 at PageID.149. However, Nartron's claims against Futaba Corporation of America in that suit were dismissed without prejudice for lack of personal jurisdiction. *UUSI, LLC v. Futaba Corp. of Am. et al.*, 6:23-CV-00440-ADA, ECF No. 122 (W.D. Tex., Oct. 22, 2024). Shortly thereafter, Nartron filed a notice voluntarily dismissing its claims against Futaba Corporation of Japan and John Does 1–9. *Id.* at ECF No. 124 (W.D. Tex., Nov. 21, 2024). Nartron filed this lawsuit the same day it voluntarily dismissed the remaining Defendants in the Western District of Texas case. ECF No. 1.

estoppel, also called issue preclusion. ECF No. 13 at PageID.151–57. And Futaba America argues that Nartron's copyright claims are time barred. *Id.* at PageID.157–60. Each set of claims will be addressed below.

## II. PATENT INFRINGEMENT CLAIMS (COUNTS 2–10)

Futaba America argues that all nine of Nartron's patent-infringement claims are barred by collateral estoppel because the Parties already litigated the issues presented in Nartron's patent-infringement claims in the 2013 state court litigation. ECF No. 13. Specifically, Futaba America asserts that the Parties have already "litigated the issues of whether JVIS or Nartron owned the [intellectual property] of the PCBAs"; thus, Nartron's patent infringement claims are collaterally estopped. *Id.* at PageID.156.

### A. Legal Standards

### 1. Civil Rule 12(b)(6)

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Typically, motions to dismiss under Civil Rule 12(b)(6) test whether a complaint alleges sufficient facts to state a plausible claim for relief. *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But "a complaint is also subject to dismissal under Rule 12(b)(6) 'when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy.'" *Scott v. Bank of Am., N.A.*, No. 21-11068, 2022 WL 4587839, at *3, n.3 (E.D. Mich. Sept. 29, 2022) (quoting 5B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 1357 (3d ed. 1998)).

The preclusive effects of issue or claim preclusion are both affirmative defenses that may be considered on a motion to dismiss under Civil Rule 12(b)(6). *See Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 275 (6th Cir. 2016) (noting that the federal procedural rules "allow parties to raise the defense of res judicata at the 12(b)(6) stage."). "In evaluating a res judicata or collateral estoppel defense presented through a [Civil] Rule 12(b)(6) motion, a court may take judicial notice of its own records and the records of other courts." *Scott*, 2022 WL 4587839, at *3, n.3 (citing *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015)).

### 2. Collateral Estoppel

"Collateral estoppel is one component of the preclusive doctrine known as *res judicata* which embodies two separate concepts: (1) claim preclusion, historically called estoppel by judgment, and (2) issue preclusion, traditionally called collateral estoppel." *In re Cole*, 428 B.R. 747, 754 (Bankr. N.D. Ohio 2009). Collateral

estoppel is a judicially created doctrine which provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Dowling v. United States,* 493 U.S. 342, 347 (1990) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Application of the doctrine is intended to shield a defendant from having to relitigate "issues that have been fully and fairly tried in a previous action." *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999) (citing *Comair Rotron, Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1537 (Fed. Cir. 1995)).

## B. Analysis

The question presented to this Court in this motion to dismiss is what preclusive effect a federal court gives to an earlier state court judgment where—as here—the federal court is exercising its jurisdiction over an exclusively federal claim that was not brought in state court. *See* 28 U.S.C. § 1338(a) (conferring upon district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks."). The parties appear to lose sight of this important context in debating whether the elements of collateral estoppel are met. Indeed, Futaba America did not cite a contextually analogous patent or copyright case in their briefing. And—notably—the parties appear to disagree about whether to apply state or federal law to determine whether

collateral estoppel bars Nartron's patent infringement claims, yet neither party explains *why* they believe state or federal law should apply. So, before analyzing the merits of Futaba America's collateral estoppel argument, this Court will first address *how* collateral estoppel functions in the context of a federal patent case where some factual disputes necessarily involved in a patent-infringement claim were previously litigated in a state court.

### 1. The Full Faith and Credit Act

The Full Faith and Credit Act mandates that the "judicial proceedings" of any state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This is true even when a state court judgment might "subsequently affect the litigation of exclusively federal claims." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 384 (1996). Indeed, the Supreme Court has "decided that 'a state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts.'" *Id.* (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

So, "[w]hen faced with a state court judgment relating to an exclusively federal claim, a federal court must first look to the law of the rendering State to ascertain the effect of the judgment." *Matsushita*, 516 U.S. at 375; *see also*

*Brandenburg Tel. Co. v. Sprint Commc'ns Co., L.P.*, 658 F. Supp. 3d 427, 452 (W.D. Ky. 2023); *Heron Cove Ass'n v. Gladwin Cnty. Bd. of Comm'rs*, No. 24-CV-11473, 2025 WL 875357, at *6 (E.D. Mich. Mar. 20, 2025). If a state court judgment would receive preclusive effect in the state in which the judgment was rendered, then the federal court "must give that judgment preclusive effect unless it determines that an exception to § 1738 should apply." *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995); *see also Matsushita*, 516 U.S. at 375; *City of Livonia Employees' Ret. Sys. v. Talmer Banorp, Inc.*, No. 16-12229, 2018 WL 5840714, at *5 (E.D. Mich. Nov. 8, 2018).

## 2. Application of Collateral Estoppel in Michigan

"In Michigan, collateral estoppel applies when: (1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019); *see also Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845 (Mich. 2004) (reciting same three elements). Where, as here, "collateral estoppel is being invoked defensively," mutuality "is not required." *Peterson*, 931 F.3d at 554.

This Court's inquiry begins and ends with the first factor: whether the issue of who owns the intellectual property of the PCBAs has been actually litigated and determined by a valid and final judgment. *See Peterson*, 931 F.3d at 554. Futaba America argues that collateral estoppel bars Nartron's patent infringement claims

because "[t]he issues of ownership of the [intellectual property] of the PCBA designs and software [were] already determined" in the state court litigation, which resulted in Futaba America and JVIS "obtaining a complete victory against Nartron's ownership claims." ECF No. 13 at PageID.151. But there are several problems with this argument.

First, as far as this Court can tell from the state-court record before it, the state court litigation only determined ownership of the *physical* PCBAs Nartron provided to JVIS that JVIS then provided to Futaba. *See* ECF No. 13-10. The state court itself acknowledged this in June 2016 when it noted that "the issue of who owns the engineering, software, and other supporting material" related to the PCBAs "remains open." ECF No. 13-10 at PageID.570. Indeed, the state court issued an order vacating in part its February 2016 order to the extent that the order could have been read as deciding the dispute regarding ownership of the intellectual property of the PCBA designs and software. *Id.* The state court clarified that it was "undisputed" that JVIS and Nartron "purchased the physical [PCBA] boards," but there was a genuine, factual dispute about whether JVIS and Futaba "also purchased the design, engineering, and software materials" related to the PCBA boards generally. *Id.* at PageID.569–70. At no point did any state court order determine that Futaba or JVIS owned the *intellectual property* disputed here.

Second, to the extent that Futaba America's argument relies on the "final determination" of the state court litigation that was reached through arbitration, the final arbitration award does not clearly state what—if any—facts were actually determined. True, the Parties litigated several factual disputes through their arbitration submissions. But what the arbitrators *actually determined* is not clear.

Futaba argues that because Nartron sought a declaration in the state court litigation that it owned the intellectual property at issue and the arbitration panel did not issue such a declaration, this means they conclusively decided Nartron did not own it. ECF No. 25, PageID.1420-21. But this Court is reluctant to give preclusive effect based solely on this argument given the paucity of information contained in the two-page final arbitration award, which presents simply a statement of the monetary damages awarded to JVIS with no findings, explanation, or reasoning. Perhaps the arbitrators found that JVIS had not improperly taken Nartron's property so the ownership was irrelevant. Or perhaps they overlooked the declaratory request since they determined for whatever reasons that Nartron was owed no money. Since there may be multiple explanations for the arbitration outcome, this Court will not apply collateral estoppel at this early motion-to-dismiss stage, based solely on the arbitration panel's silence.

Moreover,—and perhaps most importantly—even if the patent claims have "significant factual overlap" with the state court claims, "the resolution of the legal

claims in the [state court litigation] are not necessarily determinative of the purely [patent] legal claims in the present action." *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1131 (C.D. Cal. 2007). Two contextually similar cases are particularly illustrative of this point: a 1929 Supreme Court case, *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 389, and a 2007 Central District of California case, *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111. Importantly, both cases contemplate the effect of an earlier state-court judgment on subsequent federal patent or copyright claims.

In *Becher*, Oppenheimer employed Becher as a machinist to build Oppenheimer's invention ("the invention"). 279 U.S. at 390. Becher agreed to keep all information about the invention confidential and not use such information for his personal benefit. *Id.* Despite this agreement, Becher secretly obtained a patent for the invention. *Id.* Upon learning that Becher secretly patented the invention, Oppenheimer sued Becher in state court for breaches of contract and fiduciary duty. *Id.* The state court determined that Becher obtained the patent for the invention in violation of his agreement with Oppenheimer, thus breaching his contractual and fiduciary duties. *Id.* Accordingly, the state court ordered Becher to assign the invention's patent to Oppenheimer. *Id.* at 389. But instead of doing so, Becher ran to federal court to file a patent infringement suit, where he argued that the state court's ruling should be ignored because patent validity is a matter solely for federal courts.

- 17 -

*Id.* at 390. The Supreme Court rejected Becher's argument, holding that the state court's ruling must be given effect because Oppenheimer's state court claims were "independent of and prior to" any patent claim. *Id.* at 391.

Although giving preclusive effect to the state court's factual findings necessitated the legal conclusion in the federal court that Becher's patent was invalid, that is not necessarily the case here. Take, for example, the Central District of California's decision in *Siegel.* That decision applies *Becher* to a more modern copyright dispute about "who owns the copyright to 'Superboy,' the youthful persona of the iconic comic book superhero 'Superman.'" *Siegel*, 496 F. Supp. 2d at 1113. In that case, the Central District of California was presented with the question of what preclusive effect, if any, an earlier state court's determination of state law issues had on the subsequent copyright lawsuit presently before that court. *Id.* at 1121. Judge Stephen G. Larson concluded that although the state court's findings were to be given preclusive effect, those findings were "not necessarily determinative" of **all** of the issues presented in a federal copyright case. *Id.* Judge Larson's opinion thoughtfully addressed the "complicating wrinkle" presented in cases that are before a federal court based upon a congressional grant of exclusive jurisdiction. *Id.* at 1129. Relying on *Becher*, and conducting a survey of subsequent caselaw and scholarship, Judge Larson explained how the legal principle of *Becher* applies in practice as follows:

> The principle to be culled from *Becher* is that federal courts are to give preclusive effect to earlier state determinations of state questions pleaded in the complaint, even if such state law issues arise in a subsequent action within the federal court's exclusive jurisdiction, like copyright or patent. Such estoppel, however, only operates as to the purely state law claims (and attendant facts) decided by the state court. A federal court cannot simply transplant a state court's finding as including the legal conclusions of the purely and exclusively federal issues before it; although in some instances, those state findings may prove "material" to the resolution of the exclusively federal law claim, such resolution of that federal question must involve the application of those state findings to the governing federal law on the topic in question before making the legal conclusion concerning the exclusively federal issues.

*Id.* at 1132.

That same principle, established in *Becher* and further explained in *Siegel*, applies here. Any state law claims and accompanying facts that were actually litigated *and* determined in the state court litigation are to be given preclusive effect; those determinations may not be relitigated here. But, as discussed above, as it appears to this Court today, it is unclear what facts were actually litigated and determined in the state court litigation regarding ownership of the intellectual property related to the PCBAs. Indeed, the only conclusively determined fact that might be relevant in *this* patent case is that JVIS owned the *physical* PCBAs at issue in the state court litigation. *See* ECF No. 13-10. And this fact does not appear to prevent Nartron from obtaining the patents at issue here, as was the case in *Becher*.

In sum, at this early stage in this patent infringement litigation, collateral estoppel does not bar Nartron's patent infringement claims wholesale because it does

not appear from the documents that this Court is allowed to consider as part of a Rule 12 motion that the issue of who owned the intellectual property relating to the PCBAs was conclusively determined in the prior state court case.

### III. COPYRIGHT CLAIM (COUNT 1)

Futaba America also seeks dismissal of Nartron's one copyright infringement claim, arguing it is barred by the statute of limitations. ECF No. 13 at PageID.159. But, like the patent claims, this Court will not dismiss the copyright claim at this early motion-to-dismiss stage for the reasons explained below.

### A. Legal Standard

The Copyright Act imposes a three-year statute of limitations on claims of copyright infringement and ownership. 17 U.S.C. § 507(b). However, there is a significant difference as to when such a claim accrues. A claim for copyright ownership accrues when the party claiming ownership has express notice of a competing claim of ownership. *Rice v. Music Royalty Consulting, Inc.,* 397 F.Supp.3d 996, 1008 (E.D. Mich. 2019). It "accrues only once, and if an action is not brought within three years of accrual, it is forever barred." *Roger Miller Music, Inc. v. Sony/TV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007); *see also Rice,* 397 F.Supp.3d at 1007.

In contrast, claims for copyright infringement can accrue separately because "each act of infringement is a distinct harm." *Est. of Worrell v. Thang, Inc.,* No. 22-

cv-11009, 2025 WL 2552162, at *3 (E.D. Mich. Sept. 4, 2025) *(quoting Roger Miller Music, Inc.,* 477 F.3d at 390. Thus, the statute of limitations bars only those claims based on conduct that occurs outside of the three-year period before a suit is brought. *Roger Miller Music, Inc.,* 477 F.3d at 389.

## B. Analysis

Nartron describes its copyright claim as one for infringement. In its complaint, Nartron alleges that it is the sole author and exclusive owner to the copyright of its software code for the PCBAs, which was registered with the Copyright Office on May 15, 2023. ECF No. 1, PageID.6, 16. Despite this copyright, Nartron alleges that Futaba has been "reproducing, creating derivative works, and/or distributing" its software code on various PCBAs without Nartron's consent. *Id*. at PageID.11. Thus, Nartron claims that Futaba is liable for copyright infringement for its use of Nartron's software code since November 21, 2021—three years before Nartron obtained its copyright on November 21, 2024.[6] ECF No. 21 at PageID.1394.

Futaba America, however, contends that if one were to dig deeper, Nartron's copyright claim is actually an *ownership* dispute because ownership of the

---

[6] Although the Complaint does not specify which years Nartron alleges that Futaba has infringed on its copyright, Nartron appears to concede that any copyright infringement claims *before* November 21, 2021, are untimely and therefore barred by the three-year statute of limitations. *See* ECF No. 21. at PageID.1398 ("Nartron's copyright claims for acts occurring after November 21, 2021 (three years prior to suit) are timely and should not be dismissed.").

copyrighted material is contested and Nartron's current copyright claim "depends entirely on whether Nartron owns the copyrights in the software." ECF No. 13, PageID.159*; s*ee *Ritchie v. Williams*, 395 F.3d 283 (6th Cir. 2005) (holding that when copyright ownership is contested and the copyright infringement allegation is entirely a function of whether that party is the sole owner, the claim is one for *ownership*, not infringement).  Specifically, Futaba America points to the prior state court opinions and asks this Court to find that Nartron's copyright claim accrued at the time that JVIS first contested ownership of the software in July 2013, thus it is now barred by the three-year statute of limitations. ECF No. 13 at PageID.159.

Under Civil Rule 8, a complaint must contain, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 further provides that the party responding to the complaint "must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations." Fed. R. Civ. P. 8(c). Based on the plain language of Civil Rule 8, the defendant, rather than the plaintiff, bears the burden of pleading the affirmative defense of the statute of limitations. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). For that reason, a motion to dismiss based on Rule 12(b)(6) "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* But, if the factual allegations in the complaint "affirmatively show that the claim is time-barred," dismissal under Civil Rule 12(b)(6) is appropriate. *Id.*

In this case, looking at the four corners of the complaint, there are no factual allegations that "affirmatively show" that Nartron's claim is time barred. *See* ECF No. 1. Count I is styled as a copyright infringement claim. *Id*. Nartron alleges that it is the sole author and exclusive owner, and that "at no point did [it] sell" or authorize Defendants to use the copyrighted material. *Id*. Nartron is not seeking declaratory relief on ownership. *Id*. It is only if this Court considers evidence outside of the plaintiff's complaint that Futaba America's argument can be understood. Otherwise, this Court must, at this stage, "accept as true that Nartron is the registered owner of the copyright at issue." ECF No. 21, PageID.1395; *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor.)

Although this Court can take judicial notice of "the records of other courts," *Scott*, 2022 WL 4587839, at *3, n.3 (citing *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015)), as discussed earlier, what was actually litigated and decided by the state court litigation is unclear. Since any ambiguity must be construed in Nartron's favor, this Court will not dismiss the copyright claim at this juncture.

So, Futaba America's motion to dismiss Count I will be granted in part, only to the extent that any copyright infringement claims for acts of infringement occurring before November 21, 2021, will be dismissed. But Nartron's copyright

infringement claims for acts of infringement occurring after November 21, 2021, will move forward.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Futaba America's Motion to Dismiss, ECF No. 13 is **GRANTED IN PART** only to the extent that it seeks dismissal of Nartron's copyright infringement claims (Count I) for acts of infringement occurring *before* November 21, 2021;

2. Nartron's copyright infringement claims for acts of infringement occurring *before* November 21, 2021, are **DISMISSED**, but Count I remains open to the extent it alleges acts of infringement occurring *after* November 21, 2021; and

3. Futaba America's Motion to Dismiss, ECF No. 13, is **DENIED IN PART** in all other respects.

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 30, 2025

- 24 -